UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

EDWARD J. WINTERS, III,

         Plaintiff,

v.

LIBERTY LIFE ASSURANCE COMPANY
OF BOSTON n/k/a LINCOLN LIFE
ASSURANCE COMPANY OF BOSTON,

         Defendant.

Civil Action No.:

## COMPLAINT TO RECOVER ERISA WELFARE-PLAN BENEFITS

This is an ERISA claim to recover long-term disability benefits against a welfare-benefit plan administered by and insured by Liberty Life Assurance Company of Boston n/k/a Lincoln Life Assurance Company of Boston and to recover attorney's fees and costs allowed under the ERISA statute.

## PARTIES

1.     Plaintiff Edward J. Winters, III ("Mr. Winters") is currently a resident of Woodbury, Connecticut.  At the time his disability began and he first submitted a claim for benefits, he was a resident of California.

2.     Defendant Liberty Life Assurance Company of Boston n/k/a Lincoln Life Assurance Company of Boston ("Lincoln Life") is authorized to engage in the business of insurance under the laws of the Commonwealth of Massachusetts as a licensed foreign insurer and is doing business in the Commonwealth of Massachusetts.  Lincoln Life Assurance Company is the successor to Liberty Life Assurance Company of Boston which had insured and administered the Wells Fargo &

1

Company Long-Term Disability Plan ("LTD Plan") pursuant to which Winters made his claim. The LTD Plan is an ERISA-governed welfare-benefit plan.

## JURISDICTION AND VENUE

3.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1337 and § 1132(e) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq*.  Mr. Winters' claims "relate to" "employee welfare benefits plan[s]" as defined by ERISA and the LTD Plan constitutes a "plan under ERISA."

4.     The ERISA statute, at 29 U.S.C. § 1133, as well as the Secretary of Labor regulations, at 29 C.F.R. § 2560.503-1, provide a mechanism for administrative or internal appeal of benefits denials.  Mr. Winters' administrative remedies have been exhausted and this matter is now properly before this Court for judicial review.

5.     Venue is proper within the District of Massachusetts under 29 U.S.C. § 1132(e)(2) because Lincoln Life is located here, and the insurance policy funding the LTD Plan states the insurance policy was "signed at [Lincoln Life's] Home office, 175 Berkeley Street, Boston, Massachusetts, 02117."

## FACTS COMMON TO ALL COUNTS

6.     Wells Fargo & Company ("Wells Fargo") employed Mr. Winters as a mortgage consultant.

7.     As part of his compensation for providing services to Wells Fargo, Mr. Winters was entitled to participate in and did participate in the LTD Plan.

8.     Benefits under the LTD Plan are insured by Lincoln Life under Group Long Term Disability Policy No. GF3-850-289424-01 (the "Policy").  A true and accurate copy of the Policy is attached as **Exhibit A**.

9.      Mr. Winters is a participant or beneficiary in the LTD Plan as defined by ERISA, 29 U.S.C. § 1002(7).

10.     The LTD Plan provides that the Policy shall be governed by Minnesota law.

11.     Minnesota law prohibits any disability insurance policy, such as the Policy, from containing a provision that purports to grant discretion to the insurer or plan administrator to interpret the terms of the policy.  Minn. Stat. § 60A.42 specifically provides that:

> No policy, contract, certificate, or agreement offered or issued in this state providing for disability income protection coverage may contain a provision purporting to reserve discretion to the insurer to interpret the terms of the contract or provide a standard of review that is inconsistent with the laws of this state, or less favorable to the enrollee when a claim is denied than a preponderance of the evidence standard.

12.     In Section 7 of the Policy, Lincoln Life purports to reserve to itself "authority to construe the terms of this policy and to determine benefit eligibility hereunder" in direct violation of Minn. Stat. § 60A.42.

13.     Pursuant to Minn. Stat. § 60A.42, as chosen by Lincoln Life, the term in Section 7 of the Policy purporting to reserve to itself discretion to interpret the Policy is void and unenforceable. Mr. Winters is, therefore, entitled to a *de novo* review from this Court.

14.     Mr. Winters worked for Wells Fargo at various times.  He was most recently hired in February 2016, at which time he enrolled in the LTD Plan and the Policy became effective.  At the time he was hired by Wells Fargo, Mr. Winters was residing and working in San Diego, California.[1]

15.     On January 24, 2018, while still working and residing in California, Mr. Winters was forced to cease work because of a disability related to medical conditions – including migraine "headaches, dizziness, tremor, low back pain, knee pain, joint pain, fatigue, soreness, and cervical

---

[1]      Even if Lincoln Life had not chosen Minnesota law to apply, California Insurance Code § 10110.6 would similarly prohibit a disability insurer from reserving to itself discretion to interpret the Policy.

and lumbar pain with a history of Lyme's Disease since 2009" — while covered under the LTD Plan.

16.     Mr. Winters received short term disability benefits from January 31, 2018 through July 25, 2018 and otherwise satisfied the Elimination Period as defined by the Policy.

17.     Upon the expiration of the short term benefits and satisfaction of the Elimination Period, and still suffering from his disability and unable to perform the material functions of his occupation, Mr. Winters applied for long-term disability benefits under the Policy.

18.     As a direct result of his disability, and while his claim was pending, Mr. Winters relocated to Connecticut in order to be closer to his family.  He was even forced for a time to give up living independently and move in with his parents at the age of 51.

19.     Lincoln Life initially approved Mr. Winters' application for long-term benefits.  He received long-term benefits from July 25, 2018 until October 29, 2019.

20.     Pursuant to Minn. Stat. § 62A.18:

No individual or group policy of accident and health insurance issued, amended, renewed, or delivered in this state on or after January 1, 1976 shall contain any provision offsetting, or in any other manner reducing, any benefit under the policy by the amount of, or in proportion to, any increase in disability benefits received or receivable under the federal Social Security Act, the Railroad Retirement Act, any Veteran's Disability Compensation and Survivor Benefits Act, Workers' Compensation, or any similar federal or state law, as amended subsequent to the date of commencement of such benefit.

21.     Upon information and belief, Lincoln Life unlawfully deducted from Mr. Winters' benefits the benefits to which he was entitled under California law.

22.     Despite the initial approval of Mr. Winters' claim, Lincoln Life embarked on a course of conduct designed for the sole purpose of undermining Mr. Winters' claim for disability and fabricating reasons to purportedly justify the denial of further benefits.

23.     On multiple occasions, Lincoln Life hired private investigators to conduct surveillance on Mr. Winters at his home.  On none of these occasions did the investigators ever observe Mr. Winters doing anything inconsistent with his disability.

24.     Lincoln Life's investigators observed Mr. Winters over the course of 4 days on June 11, 12, 13, and 17, 2019.  During these four days of surveillance, the investigators did not observe Mr. Winters even leave the house.

25.     Despite the lack of any evidence found by the investigators to contradict that Mr. Winters' life was exactly as represented to Lincoln Life, Lincoln Life commissioned an independent medical examination ("IME") of Mr. Winters.

26.     The IME was scheduled for mid-July but had to be rescheduled because Mr. Winters was admitted to the hospital with severe gastrointestinal symptoms.

27.     On the day before the scheduled IME, July 14, 2019, and the originally scheduled day, July 15, 2019, Lincoln Life again ordered surveillance of Mr. Winters.

28.     Lincoln Life ordered additional surveillance of Mr. Winters on September 4, 2019 and the morning of September 5, 2019, the day on which Mr. Winters was re-scheduled for his IME. On September 4, 2019, the investigators did not see Mr. Winters leave the house.  On September 5, 2019, they observed him stand in the backyard with his dog.

29.     Although, upon information and belief, there are qualified doctors in Mr. Winters' community to perform the IME, Lincoln Life required Mr. Winters to see an IME doctor named Neil Patel, M.D. in Nyack, New York, approximately a 90-minute drive from his home.

30.     Upon information and belief, Lincoln Life uses Dr. Patel regularly because it knows that it can depend on him to conclude claimants are able to work despite suffering documented disabling medical conditions.  Lincoln Life's reliance on Dr. Patel's opinion has recently been rejected in another federal court as unreasonable when Lincoln Life used Dr. Patel for a case in

North Carolina (over 500 miles from Dr. Patel's office).  See McKinnon v. Duke University, 2020 U.S. Dist. LEXIS 139162, at *31-32 (E.D. N.C. Aug. 5, 2020).

31.     Because Mr. Winters cannot drive due to his disability, Lincoln Life sent a driver to take him to the IME.

32.     Dr. Patel spent less than 10 minutes with Mr. Winters.  In his report, Dr. Patel confirmed that Mr. Winters suffered: (1) chronic headaches, exacerbated by excessive or fluorescent light in the environment; (2) chronic pain, including severe neck pain and lower back pain; and (3) chronic fatigue syndrome, all of which were supported by the medical records and his brief examination.  As Lincoln Life intended, Dr. Patel nevertheless purported to conclude that Mr. Winters was able to perform sedentary work with limitations.

33.     Relying selectively on Dr. Patel's pre-conceived IME, on October 30, 2019, Lincoln Life rendered an adverse-benefit determination, denying Mr. Winters further benefits, and closing his LTD claim effective October 30, 2019 (the "Adverse Determination").

34.     In the Adverse Determination, Lincoln Life purported to rely on the record reviews that were months or in some cases more than a year old, Dr. Patel's IME report and an alleged confirmation from Mr. Winters' treating physician, Dr. Joseph P. Deluca, that Mr. Winters had sedentary work capacity.

35.     The purported reliance on Mr. Winters' treating physician, Dr. DeLuca, was false; Mr. Winters' treating physician has consistently concluded, and does so to this day, that Mr. Winters is totally disabled as a result of his medical condition.

36.     In rendering its Adverse Determination, Lincoln Life failed to account for Mr. Winters' chronic disabling headaches, chronic pain and chronic fatigue syndrome, which he has consistently reported and which are confirmed in the medical records.

6

37.     Mr. Winters' treating physicians all agree that Mr. Winters was totally disabled as of October 30, 2019, and remains so to this day.

38.     Because of the Covid-19 pandemic, Mr. Winters encountered difficulty gathering all of his medical records for his appeal.

39.     On March 25, 2020, more than 30 days before the deadline for his appeal of the Adverse Determination, Mr. Winters requested a 90-day extension of time in which to submit his appeal noting that the pandemic was creating difficulties for him to obtain all relevant information he needed to prosecute his appeal.

40.     Lincoln Life did not timely respond to Mr. Winters' request for an extension of time.

41.     As a result, on April 20, 2020, Mr. Winters timely appealed the Adverse Determination, submitted the incomplete medical records he had been able to gather to that date, and reiterated his request for an extension of time in which to submit his complete medical records in support of his appeal.

42.     On or about May 11, 2020, counsel for Mr. Winters received a letter from Lincoln Life, purportedly dated April 18, 2020, which belatedly and only partially granted Mr. Winters' request for an extension of time.  It stated that he could have an additional 45 days rather than the requested 90 additional days in which to submit his appeal.

43.     Shortly thereafter, and despite previously having acknowledged and partially granted Mr. Winters' request for additional time to gather additional medical records, Lincoln Life issued a second letter to Mr. Winters falsely claiming that it understood that the information he was forced to submit prematurely on April 20, 2020 was all of the information he intended to rely on in his appeal.

44.     Even though Lincoln Life had granted Mr. Winters an extension to submit his complete medical records, Lincoln Life forged ahead in its quest to uphold the Adverse Determination by proceeding to obtain two additional medical record reviews.

45.     On or about June 10, 2020, within the extended time period granted by Lincoln Life in its April 18, 2020 letter, Mr. Winters submitted additional medical records in support of his appeal.

46.     Neither of Lincoln Life's medical records reviewers reviewed Mr. Winters' complete medical records and their reports are, therefore, unreliable.

47.     On or about July 1, 2020, Mr. Winters, through counsel, provided additional medical records to Lincoln Life in support of his appeal.

48.     On or about July 14, 2020, Mr. Winters' counsel received a letter from Lincoln Life purportedly dated July 1, 2020, which provided copies of the two additional medical record reviews to Mr. Winters.

49.     On or about July 24, 2020, Mr. Winters, through counsel, commented on the record reviews and pointed out that they had been performed before the extended deadline to submit medical records in support of his appeal and failed to consider all of his medical records.

50.     Lincoln Life did not respond for nearly three months.

51.     On or about October 22, 2020, Mr. Winters' counsel received a letter from Lincoln Life, purportedly dated October 13, 2020, denying his appeal (the "Denial of the Appeal").  A true copy of the Denial of the Appeal is attached as **Exhibit B**.

52.     In addition to the medical record reviews that Lincoln Life provided in its letter dated July 1, 2020, the Denial of the Appeal purports to rely upon additional medical record reviews that have never been provided to Mr. Winters and with regard to which he was never afforded an opportunity to respond.

53.     By failing to provide Mr. Winters with all evidence relied upon in reaching its decision and an opportunity to respond, Lincoln Life denied Mr. Winters a reasonable opportunity for a full and fair review of his claim.

54.     Mr. Winters has exhausted his administrative remedies under the Policy.

55.     Lincoln Life owed Mr. Winter duties as a fiduciary of the LTD Plan, including the duty of loyalty.

56.     Lincoln Life was and is under a structural conflict of interest because it both adjudicates claims and pays the benefits with its own funds.

57.     One of Lincoln Life's Case Managers testified in March 2018 that Lincoln Life always relies on the opinion of the file-reviewing physician over the opinion of the claimant's treating physicians.  A true and accurate copy of excerpts from the Deposition of Amanda Pipenbacher, *Addington v. Lincoln Life Assurance Co. of Boston, et al.*, No. 2:17-cv-00444 (W.D. Pa., 3/29/2018), are attached hereto as **Exhibit C.**

58.     In Mr. Winters' case, Lincoln Life acted consistently with its usual practice in relying automatically and solely on its own hired doctor instead of properly evaluating the evidence.

59.     Lincoln Life's automatic reliance on its own hired physician is both evidence of arbitrary and capricious decision-making and evidence showing bias toward denying the claim.

60.     Lincoln Life allowed its concern over its own funds to influence its decision-making process.

61.     Lincoln Life breached its fiduciary duties to Mr. Winters, including the duty of loyalty.

62.     Lincoln Life failed to include evidence in the pre-suit claim file that it insulates its employees from the pernicious effects of financial conflict.

**FIRST CAUSE OF ACTION**
**FOR PLAN BENEFITS UNDER 29 U.S.C. § 1132(a)(1)(B)**

63.     Mr. Winters repeats and incorporates by reference the allegations from each of the foregoing paragraphs as if fully set forth herein.

64.     The decision to deny benefits by Lincoln Life was wrongful, not supported by substantial evidence and not in compliance with the law and the terms of the LTD Plan or Policy.

65.     Mr. Winters was not afforded a full and fair review of the Adverse Determination for the reasons set forth above.

66.     Lincoln Life's decision must be reviewed *de novo* by this Court.

67.     Because of Lincoln Life's refusal and failure to pay to Mr. Winters disability benefits provided to him and to those participants who are totally disabled, and because of its failure to provide him with a full and fair review of its Adverse Determination, and its self-interested breach of its fiduciary duty to Mr. Winters, he is entitled to relief against Lincoln Life to recover benefits due to him under the terms of the LTD Plan, to enforce his rights to benefits under the LTD Plan, and to clarify his rights to future benefits under the LTD Plan under 29 U.S.C. § 1132 (a)(1)(B).

## SECOND CAUSE OF ACTION
## AWARD OF ATTORNEY'S FEES AND COSTS

68.     Mr. Winters repeats and incorporates by reference the allegations from each of the foregoing paragraphs as if fully set forth herein.

69.     Lincoln Life unlawfully denied benefits and has caused Mr. Winters to incur attorney's fees and costs and will cause him to incur additional fees and costs. Mr. Winters may recover under 29 U.S.C. § 1132(g), costs, including reasonable attorneys' fees and interest at no less than the Massachusetts statutory rate of 12% simple interest per annum on all back due benefits.

## REQUEST FOR RELIEF

**WHEREFORE,** Mr. Winters demands the following relief and judgment against Lincoln Life:

A.      For a sum of money to be determined by this Court, plus pre-judgment interest (at no less than the Massachusetts statutory rate), post-judgment interest, costs, and reasonable attorney's fees allowed by statute or otherwise;

B.      Injunctive relief declaring the rights and duties of Mr. Winters and Lincoln Life regarding past benefits owed to Mr. Winters, and future benefits to be paid to Mr. Winters;

C.      For an order precluding Lincoln Life from using offsets in the LTD Plan because of its unclean hands.

D.      In the alternative, remanding the benefit denial to Lincoln Life to be decided again with an order requiring "full and fair review" under ERISA, 29 U.S.C. §1133(2).

E.      For such other legal or equitable relief as this Court deems just and proper.

Respectfully submitted,

EDWARD J. WINTERS, III,
By his attorneys,


*/s/ Sean T. Carnathan*
Sean T. Carnathan, BBO No. 636889
*scarnathan@ocmlaw.net*
Joseph P. Calandrelli, BBO No. 666128
*jcalandrelli@ocmlaw.net*
O'Connor Carnathan and Mack LLC
1 Van de Graaff Drive, Suite 104
Burlington, Massachusetts 01803
Tel. 781-359-9000

*Of counsel*

*Ryan D. Saba, Esq.*
*Laura Kelly St. Martin, Esq.*
*Rosen Saba LLP*
*9350 Wilshire Blvd., Suite 250*
*Beverly Hills, CA 90212*                      Dated:  October 28, 2020